UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN ALLEN L.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-1064 MLP

ORDER AFFIRMING THE COMMISSIONER

# I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits for a closed period of disability from May 1, 2014 until June 27, 2016, the date that Plaintiff returned to full-time work. AR at 38. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting the medical opinions of two examining psychologists, David Widlan, Ph.D. and Miles Hohnegger, Ph.D., and an examining physician, Ann Alvarez M.D. (Dkt. # 8 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision, and DISMISSES the case with prejudice.

//

## II. BACKGROUND

Plaintiff was born in 1973, graduated from high school, and completed approximately a year and a half of college. AR at 36. In October 1994, Plaintiff was injured during an electrocution accident in Haiti while serving in the United States Army. *Id.* at 43. As a result of the electrocution, Plaintiff injured his right hand and foot. Doctors later amputated a large portion of Plaintiff's right foot. Despite his injuries, Plaintiff continued to work until sometime in 2014. In June 2016, Plaintiff began working as a project manager for a carpet and flooring company. *Id.* at 42. Prior to June 2016, Plaintiff was last gainfully employed in May 2014. *Id.* at 56.

On October 29, 2014, Plaintiff protectively filed an application for Disability Insurance Benefits claiming his disability began on May 1, 2014. AR at 15. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted hearings on December 20, 2016 and March 16, 2017, the ALJ issued a decision finding Plaintiff not disabled, able to perform past relevant work, and in the alternative, the ALJ found that there are other jobs existing in the national economy that Plaintiff is able to perform. *Id.* at 26-27.

The ALJ found that the Plaintiff had severe impairments including remote partial amputation of the right foot, right wrist impairment status post injury and carpal tunnel release, right knee degeneration, diabetes, depressive disorder, anxiety disorder, and substance addiction disorder. AR at 17. The ALJ determined that the impairments did not meet or equal a listed impairment and that he has the residual functional capacity to perform light work with some limitations. *Id.* at 17-19. As part of his decision, the ALJ evaluated the medical opinions of two State agency consultants, giving these opinions significant weight. *Id.* at 24. With respect to Drs.

Widlan and Hohenegger, the ALJ gave them "some/partial weight" because they both only evaluated the Plaintiff on one occasion, relied heavily on the Plaintiff's subjective reports of limitations, used vague terms, and because the Plaintiff claimed more severe limitations during these evaluations than he had reported throughout the treatment records. *Id.* at 24. As for Dr. Alvaraz, the ALJ gave little to no weight to her opinion because there was no indication she actually treated the Plaintiff, used unclear terms, and offered contradictory limitations in the same opinion. *Id.* at 25.

Finally, the ALJ found that Plaintiff could perform his past relevant work, or alternatively, that given Plaintiff's age, education, work experience, and residual functional capacity, the Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. AR at 27. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

Plaintiff appeals only the issue of whether the ALJ erred by "rejecting" the medical opinions of Drs. Widlan, Hohnegger and Alvarez. (Dkt. # 8 at 1-2.) As a threshold matter, the ALJ did not reject these opinions, but rather gave them partial weight. Regardless, the Court finds that the ALJ's reasoning for affording these opinions lesser weight than other evidence in the record was based on specific and legitimate reasons, supported by substantial evidence.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

**A. The ALJ Did Not Err in Affording Dr. Widlan's Opinion Some/Partial Weight**

On April 27, 2015, Dr. Widlan, an examining psychologist, conducted a clinical interview of Plaintiff after a referral for an evaluation of potential diabetes, depression, and PTSD. AR at 576. Dr. Widlan did not review any treatment records for Plaintiff. *Id.* Dr. Widlan concluded that Plaintiff did not appear to meet the criteria for PTSD. *Id.* at 579. Dr. Widlan did find that Plaintiff suffered from Major Depressive Disorder, Anxiety Disorder, Alcohol Abuse in partial remission, and Cannabis Abuse. *Id.* He found that Plaintiff had some deficits in memory, concentration, and social reasoning, but he was cognitively able to accept simple instruction from a supervisor. *Id.* Dr. Widlan deferred the issue of diabetes to a treating physician. *Id.* Dr. Widlan also determined that Plaintiff would benefit from weekly counseling to help him improve his ability to cope with daily stressors. *Id.* Finally, Dr. Widlan noted that Plaintiff "would struggle to consistently negotiate routine social stressors," and that "issues associated with depression appear to significantly impact his ability to keep up with ADLs." *Id.* at 580. Dr.

Widlan did not elaborate on what issues were associated with Plaintiff's depression, how it affected his ADLs, or even which ADLs would be affected by his depression.

Regardless, the ALJ agreed with aspects of Dr. Widlan's opinion, such as his finding that Plaintiff could handle his own funds and accept instructions form supervisors, but had difficulty with memory, concentration, social reasoning, negotiating routine social stressors, and complex instructions. AR at 24. The ALJ noted that this aspect of Dr. Widlan's opinion was supported by the longitudinal medical evidence as well as Plaintiff's daily activities, and was generally in concert with the State agency opinions which the ALJ afforded significant weight. AR at 24. Thus, the ALJ properly accounted for this aspect of Dr. Widlan's opinion by adding further limitations to the Plaintiff's residual functional capacity. AR at 25.

The ALJ explained that the reason he did not give Dr. Widlan's opinion greater weight was because it was based on a single evaluation at which Plaintiff alleged more severe limitations and symptoms than he had reported throughout the treatment records. AR at 24. The Court does not agree that the fact that Dr. Widlan was an examining (rather than treating) physician, standing alone, is sufficient reason to give the opinion less weight. Indeed, the Commissioner routinely relies on the opinion of non-examining physician who have never even met the claimant about whom they are rendering an opinion. That said, the ALJ could reasonably find that Dr. Widlan's opinion was based upon Plaintiff's subjective reports, which were inconsistent with his reports made to other providers throughout the record. *Id*. at 24. The Court also agrees that the ALJ could reasonably afford Dr. Widlan's opinion only partial weight to the extent his opinion about Plaintiff's limitations was so vague as to be almost useless. For example, the ALJ pointed out that Dr. Widlan's use of vague and undefined terms such as "would likely struggle" and "some difficulty" lacked sufficient clarity to determine any degree of

limitation. *Id.* at 24. The ALJ's concerns regarding Dr. Widlan's failure to separate out the effects of Plaintiff's substance abuse when assessing his limitation was another specific and legitimate reason to afford the opinion less weight. *Id.*

For these reasons, the Court finds that to the extent the ALJ declined to adopt aspects of Dr. Widlan's opinion, the ALJ provided several specific and legitimate reasons, supported by substantial evidence. Plaintiff has not shown any harmful error in the ALJ's consideration of Dr. Widlan's opinion.

### B. The ALJ Did Not Err in Affording Dr. Hohenegger's Opinion Some/Partial Weight

The ALJ gave similar reasons for affording Dr. Hohenegger's opinion only "some/partial weight" as he articulated for Dr. Widlan. Specifically, the ALJ found that Dr. Hohenegger only examined the Plaintiff on one occasion, used vague terms, did not explain or clarify the degree of limitations, and appeared to rely heavily on Plaintiff's subjective report of limitations. AR at 24-25. As with Dr. Widlan, the ALJ did not "reject" Dr. Hohenegger's findings entirely, but gave them less weight due to the above reasons. Accordingly, the ALJ did account for Dr. Hohenegger's opinion by adding further limitations to the Plaintiff's residual functional capacity. *Id.* at 25. While the fact that it was a one-time examination, without more, is an insufficient basis to give an examining opinion lesser weight, the Court is satisfied that the other reasons provided by the ALJ – i.e., Dr. Hohenegger relied on subjective reports of limitations, used vague terms, and did not specify degrees of limitations – are supported by substantial evidence.

On May 5, 2015, Dr. Hohenegger examined Plaintiff. AR at 470. He conducted a PTSD Exam and found Plaintiff to be moderately to severely affected by PTSD from his near electrical death. *Id.* Dr. Hohenegger also found that Plaintiff suffers from "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to

perform occupational tasks, although generally functions satisfactorilly [sic], with normal routine behavior, self-care and conversation. *Id.* at 468. He also found that the Plaintiff's stress "does, on occasion, decrease social, occupational, and family capabilities . . . ." *Id.* at 470. The ALJ did not find the report to be persuasive because of the use of vague terms such as "on occasion" and "generally functions." In addition, Dr. Hohenegger's failure to do any function-by-function analysis of Plaintiff's capabilities or limitations was another reason for not affording the report much weight. *Id.* at 25. Accordingly, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for affording Dr. Hohenegger's opinion only partial weight.

### C. The ALJ Did Not Err in Affording Dr. Alverez's Opinion Little to No Weight

Plaintiff argues that the ALJ erred by rejecting Dr. Alverez's opinion that Plaintiff was limited to sedentary work. (Dkt. # 8 at 4.) The ALJ gave Dr. Alverez's opinion little to no weight because there was no indication that she had actually treated Plaintiff at the VA (although she completed a "Disability Benefits Questionnaire" on Plaintiff's behalf) and Plaintiff does not dispute this finding. AR at 25 (*see also* Dkt. ## 8 at 4; 11 at 3-4). More importantly, the ALJ essentially rejected Dr. Alverez's report as internally inconsistent, and found that it was not supported by the medical evidence in the record. AR at 25. Specifically, the ALJ found that Dr. Alverez's opinion that Plaintiff could only perform sedentary work but also "for physical strenuous work – [Plaintiff] has limitation to climbing up and down stairs, ladders, prolonged walking, standing" to be contradictory. *Id.* The Court agrees that the ALJ could reasonably find that Dr. Alverez's statement indicates that she believed Plaintiff could, in fact, perform more than sedentary work with some additional limitations. *Id*. In addition, the ALJ noted that "she did not offer clear, specific limitations, stating only, 'he has limitation' without further explanation."

*Id.* The ALJ could reasonably conclude that Dr. Alverez's opinion was vague and internally inconsistent, and afford it little weight on this basis.

Accordingly, the ALJ articulated several specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Alverez's opinion. Plaintiff has not demonstrated any harmful error by the ALJ in evaluating the medical opinion evidence in this case.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 12th day of April, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge